David M. Given (SBN 142375)
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 - The Presidio
San Francisco, CA 94129
Telephone: 415-398-0900
Fax: 415-398-0911
Email: dmg@phillaw.com

Edward Klaris (*pro hac vice* application forthcoming)
KLARIS LAW PLLC
475 Park Avenue South, 22nd Floor
New York, New York 10016
Telephone: 917-822-7468
Email: edward.klaris@klarislaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| POP MIDDLE EAST, INC., a foreign corporation,<br><br>Plaintiff,<br><br>v.<br><br>POPSUGAR INC., a Delaware corporation; EBATES INC., a Delaware corporation,<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND FRAUD**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

**INTRODUCTION**

1. Defendant PopSugar Inc., is a media and technology company that until recently owned and operated the online shopping platform ShopStyle. ShopStyle is a popular online fashion marketplace selling apparel, accessories, beauty products, home furnishings and children's items from a range of designers and brands. In Feb. 2017, Defendant Ebates Inc., announced that it had acquired ShopStyle from PopSugar.



PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

2. In mid-2015, to market ShopStyle more effectively to the Middle East region of the world, PopSugar entered into negotiations for a license with Plaintiff Pop Middle East, Inc. The parties' license agreement contemplated that PopSugar would develop and deploy an Arabic version of ShopStyle, which Pop Middle East would manage and promote to drive revenue from the site, and that Pop Middle East would have exclusive rights to ShopStyle in the territory in question.

3. During the course of the parties' contract negotiations from June to Oct. 2015, PopSugar repeatedly emphasized to Pop Middle East ShopStyle's steady and consistent revenue growth. PopSugar eventually induced Pop Middle East to enter into a license agreement to be the Middle East licensee for ShopStyle based in material part on financial data provided by PopSugar reflecting ShopStyle's revenue growth and on PopSugar's representations that such growth showed "no signs of slowing down."

4. PopSugar's representations about its revenue growth were knowingly and demonstrably false. In fact, as Pop Middle East later came to learn, ShopStyle's revenue growth had not only slowed by June 2015, its revenue had begun a precipitous decline.

5. Moreover, PopSugar failed to develop the ShopStyle website in Arabic, as required under the parties' license agreement, even after inducing Pop Middle East to agree to an extension of the contractual deadline for its launch, thereby robbing Pop Middle East of the opportunity to effectively address the Arab-speaking market and rendering the license far less valuable – and its revenue milestones far more difficult to meet.

6. Before the parties could reach a mutually agreeable solution to these issues, PopSugar purported to unilaterally terminate the parties' license agreement, giving no reason. This action followed shortly after the public announcement of Ebates' acquisition of ShopStyle.

7. Pop Middle East seeks to hold PopSugar and Ebates accountable for their willful misconduct in these breaches of contract and fraud, and to vindicate its rights under the parties' license agreement.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

**JURISDICTION AND VENUE**

8. Pop Middle East is a corporation organized and existing under the laws of the British Virgin Islands, with its principal place of business in Dubai, UAE. It is a wholly owned subsidiary of Nervora, Inc., a Dubai-based publisher specializing in premier digital content and advertising experiences in the fashion and lifestyle sectors.

9. PopSugar is incorporated under the laws of the State of Delaware, with its principal place of business in San Francisco, California. PopSugar is an online platform featuring lifestyle content targeted towards women aged 18-34, covering topics such as fitness, fashion, beauty, food and entertainment.

10. Ebates, a leader in online cash-back shopping, is incorporated under the laws of the State of Delaware, with its principal place of business in San Francisco, California.

11. This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332(a)(2). The parties are completely diverse, as reflected above, and the amount in controversy exceeds $75,000, exclusive of interest and costs, as reflected below.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) because both PopSugar's and Ebates' principal executive offices are located within this District. In addition, the parties' license agreement calls for application of California law and venue in this District.

**FACTUAL ALLEGATIONS**

**Agreement Structure**

13. On or about Oct. 28, 2015, Pop Middle East and PopSugar entered into a written license agreement (the "Agreement") making Pop Middle East the exclusive Middle East and North Africa licensee for the ShopStyle Middle East website ("ShopStyle").

14. The parties structured the financial terms of the Agreement around actual and expected revenue collected by either party from merchants/retailers as a result of an end user clicking on links on ShopStyle or any other revenue from merchant/retailers in connection with ShopStyle ("Ecommerce Revenues"). Pop Middle East would be paid only if ShopStyle's revenue exceeded a certain annual target in Ecommerce Revenue (the "Revenue Baseline").

15. Revenue Baselines for the first five years under the Agreement were set out in a schedule to the Agreement. If ShopStyle's revenue fell below the Revenue Baseline for any given year, Pop Middle East would not benefit under the Agreement for that year. The Agreement also gave PopSugar the right to terminate if the parties failed to generate predetermined Ecommerce Revenue milestones for years four and six of the Agreement's term (Section 12.4) and, in the event of termination for reasons other than those stated in Section 12 of the Agreement, a provision for payment of a sum equivalent to two times the aggregate Ecommerce Revenues in excess of the Revenue Baseline generated by Pop Middle East during the trailing 12 month period (Section 12.6).

16. The Revenue Baselines and milestones as well as the termination payment provision were all predicated on accurate and complete data reflecting ShopStyle's revenue for the periods up to the date of the Agreement. PopSugar's complete and accurate disclosure of such data was therefore a prerequisite to the Agreement.

17. Section 15.5 of the Agreement, limiting liability and recoverable damages as between the parties, does not apply in the event of "willful misconduct." PopSugar's intentional misrepresentations and breach of contract, as detailed below, constitute willful misconduct. For this reason among others, any limitation of liability contained in the Agreement does not apply to the claims stated herein.

**Pre-Contractual Misrepresentations Relating to ShopStyle's Revenue Growth**

18. The parties to the Agreement were first introduced in 2013 and discussed various business opportunities before negotiating the terms and conditions of the Agreement from approximately June through Oct. 2015.

19. An important change took place during those negotiations when Google adjusted its search algorithm with the publicly known release of Panda 4.2. This development was highly relevant to ShopStyle's business model. Like all online aggregator-type businesses, ShopStyle relied heavily on search engine traffic to generate revenue. Traffic constitutes ShopStyle's biggest proxy for revenue.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

20. Like any business reliant on search engine traffic, the e-commerce market is influenced by algorithm changes and how users shop online. For these reasons, during the course of negotiations, Pop Middle East expressed its misgivings about using set revenue milestones in the Agreement.

21. Indeed, on July 30, 2015, Pop Middle East proposed a model to avoid setting in stone a "highly sensitive growth rate." It reiterated this proposal on Aug. 7, 2015. Despite these clearly communicated concerns as well as the upfront financial risk such a fixed structure would present for Pop Middle East, PopSugar insisted on an annual Revenue Baseline and revenue milestones for years four and six.

22. On Oct. 22, 2015, to justify these contractual provisions, PopSugar's Jo Bargioni sent to Pop Middle East actual revenue data. This revenue data showed a sharply positive trend. While provided at a late stage in the parties' negotiations, the sharing of that data was a crucial step toward conclusion of those negotiations and constituted the only real opportunity for Pop Middle East to test PopSugar's claims regarding ShopStyle's financial performance. Prior to that point, all such figures were provided anecdotally by PopSugar through email or telephone calls.

23. When Pop Middle East reacted to this data, repeating its concerns, Pop Sugar's Liz Gough replied in an Oct. 23, 2015 email, underscoring that data's upward trend and representing: "*our current SS business in the region is growing 15% a year* – with no effort on our part" and "projections for e-commerce growth in the region show CAGRs [compound annual growth rates] above 20% in all years *with no signs of slowing down*." (Emphasis added.) In reliance on these representations, Pop Middle East agreed to Liz Gough's proposal to raise the year four CAGR from 2.5% to 12%. PopSugar reassured Pop Middle East that 12% annual growth rate was a "reasonable benchmark *given our existing business* as well as the overall market conditions." (Emphasis added.)

24. The parties signed the Agreement five days later, on or about Oct. 28, 2015. Pop Middle East immediately undertook to meet its obligations under the Agreement, eventually spending hundreds of thousands of dollars in connection therewith.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

25. On Dec. 15, 2015, Pop Middle East received the first monthly revenue report under the Agreement with data for ShopStyle's Nov. 2015 revenue. That data revealed discrepancies between ShopStyle's 15% growth rate as presented prior to signing the Agreement, and ShopStyle's actual financial performance for the month of Nov. 2015. Rather than an increase, the data showed a decline in revenue year-over-year for the month. Pop Middle East communicated its concern to PopSugar within two hours of receiving this report, highlighting the difference between the actual results and what it had been led to believe was the business' growth trend.

26. This downward trend continued into 2016, worsening sharply into double-digit declines year-over-year in ShopStyle's monthly revenue.

27. Concerned about its ability to meet the Revenue Baselines, on Jan. 19, 2016, Pop Middle East again communicated in writing with PopSugar on this subject.

28. On Jan. 20, 2016, Pop Middle East's Shashi Menon and PopSugar's Jo Bargioni met over breakfast in London. Over the course of this meeting Bargioni revealed for the first time that PopSugar was aware as early as June 2015, i.e., the very beginning of the parties' negotiations, of the adverse effect of Google's new algorithm on ShopStyle's revenue.

**Failure to Renegotiate Revenue Baseline**

29. Throughout the term of the Agreement, PopSugar submitted revenue data for the month prior by the 14th or 15th day of each month. The monthly revenue reports showed declines that Pop Middle East had no reason to expect based on the data shared by PopSugar in Oct. 2015 and on the representations made to it at that time.

30. Following the breakfast meeting in London, on Jan. 26, 2016, Pop Middle East emailed PopSugar asking for a change to the Revenue Baseline. During a Skype call in early Feb. 2016, Genevieve Kunst, Chrissy Fitzgerald and Jo Bargioni of PopSugar repeatedly rejected any change to the Revenue Baseline, but promised to monitor the situation to determine its cause.

31. The downward trend continued into 2016 and worsened, however. With the exception of Jan. 2016, all months in 2016 showed sharp, double digit declines in revenue from the corresponding months in 2015.

32. On April 22, 2016, Pop Middle East reiterated its concern, asking PopSugar for an explanation regarding these revenue declines. PopSugar showed no interest in addressing the Revenue Baseline despite additional requests made by Pop Middle East during Skype conversations and in-person meetings in London.

33. To substantiate its concern, on Aug. 12, 2016, Pop Middle East provided PopSugar with a month-to-month comparison of ShopStyle's revenue performance since commencement of the Agreement's term, plotted against the data it received in Oct. 2015. This comparison highlighted the data discrepancies and Pop Middle East asked again for changes to the Revenue Baseline to make the contractual arrangement between the parties viable.

34. On Dec. 29, 2016, following repeated requests, PopSugar's General Counsel, Su-Jin Lee, shared new "confirmed" financial data with Pop Middle East, detailing revenue from 2014 to 2016. The data differed from the data Pop Middle East received from PopSugar in Oct. 2015, which now appeared to selectively showcase revenue through June 2015, having the effect of hiding ShopStyle's revenue declines. According to this new data, ShopStyle's revenue trend changed beginning in June 2015, first to single digit growth (June-July 2015) and then to decline (Aug.-Sept. 2015). PopSugar did not disclose this downward revenue trend to Pop Middle East at any point prior to the signing of the Agreement.

35. Notwithstanding the above, PopSugar refused to renegotiate and began to threaten termination of the Agreement. On April 4, 2017, PopSugar followed through on its threat, serving a notice of termination of the Agreement, effective immediately, citing Section 12.6 of the Agreement, but giving no reason therefor.

36. On information and belief, during this same time period, and unknown to Pop Middle East, PopSugar was negotiating with one or more parties for the sale of ShopStyle. Ebates announced its acquisition of ShopStyle on Feb. 23, 2017. Business Wire, among others, reported the announcement, quoting Kevin H. Johnson, CEO of Ebates as follows: "We're

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

thrilled to work with ShopStyle and PopSugar to connect even more shoppers with the right retailers through unique digital content. Content commerce is critical to the future of ecommerce, and ShopStyle is the natural fit to help us reach the next level of market leadership." Business Wire also quoted Brian Sugar, CEO of PopSugar, as follows: "We are excited that ShopStyle will accelerate its growth by leveraging Ebates' expertise in ecommerce. At the same time, this will provide PopSugar the opportunity to further invest in and double down on our position as the leading global media lifestyle company for young women."

37. Since then, Ebates set about to inform ShopStyle consumers and potential employees that ShopStyle was now part of Ebates. The careers section of the Ebates careers website currently lists 17 job positions with ShopStyle, namely in Business Development, Engineering, Marketing, Operations, Product Management and Sales. Ebates' advertisement of job opportunities with ShopStyle is indicative of a consolidation between Ebates and ShopStyle's former owner, PopSugar.

**Translation of ShopStyle into Arabic**

38. The digital market in the Middle East is heavily driven by Arabic. In Saudi Arabia, for example, upwards of 80-90% of daily Google searches are conducted in Arabic. Online retailers such as MyTheresa.com that have launched Arabic interfaces have reported significant increases in traffic and revenue. The largest ecommerce site in the region, Souq.com, which was recently acquired by Amazon.com, also heavily relied on its Arabic site.

39. Recognizing the importance of a website in Arabic, ShopStyle was due to launch in Arabic on July 1, 2016 (Schedule 3 of the Agreement (the "Development Schedule")). It was incumbent upon PopSugar to deliver adequate technical staff and resources to meet the deadlines in the Development Schedule – namely, the launch of the ShopStyle website in Arabic – and use commercially reasonable efforts to deliver in advance of such deadlines.

40. By Dec. 2015, it was clear PopSugar would not meet this contractual obligation. Accordingly, in good faith, Pop Middle East agreed to extend the deadline to Sept. 30, 2016, as part of an addendum to the initial Agreement.

41. PopSugar nevertheless failed to make any progress on the rollout of the Arabic website. By the revised deadline, the Arabic ShopStyle website had not been launched, placing PopSugar in breach of the Agreement by that date. The website to date exists in English only.

42. Given that ShopStyle's business model depends so heavily on search engine traffic, the translation of the website into Arabic was material to Pop Middle East's ability to meet the Revenue Baselines and to otherwise generate Ecommerce Revenue.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF AGAINST BOTH DEFENDANTS**

**(BREACH OF CONTRACT)**

43. Pop Middle East incorporates by reference the allegations in paragraphs 1 to 42 as if fully set forth herein.

44. The Agreement placed the obligation to develop and launch the ShopStyle website in Arabic on PopSugar.

45. Pop Middle East performed all obligations and conditions required by it in the Agreement. Indeed, it went beyond those obligations by granting PopSugar a good faith three-month extension to develop the ShopStyle website in Arabic.

46. PopSugar breached the Agreement by failing to develop and launch the ShopStyle website in Arabic.

47. Based on PopSugar's conduct described in this Complaint, PopSugar also waived its right and/or is estopped to deny such obligations and breaches.

48. On information and belief, Ebates assumed all liabilities of PopSugar as they relate to the ShopStyle business, including the obligations and liabilities of PopSugar under the Agreement. Ebates is therefore liable for PopSugar's breach of contract as set forth herein.

49. As a result of this breach, Pop Middle East has suffered damages.

**SECOND CLAIM FOR RELIEF AGAINST BOTH DEFENDANTS**

**(BREACH OF THE IMPLIED COVENANT)**

50. Pop Middle East incorporates by reference the allegations in paragraphs 1 to 42 as if fully set forth herein.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

51. The Agreement contained an implied promise of good faith and fair dealing, whereby neither party would do anything to unfairly interfere with the right of the other party to receive the benefits of their contract. The Agreement further required PopSugar to act at all times in a manner consistent with a duty of good faith and fair dealing in the performance and enforcement of the Agreement under law.

52. Pop Middle East has performed all obligations and conditions required by it in the Agreement and/or excused from doing so.

53. PopSugar breached the covenant of good faith and fair dealing by unfairly interfering with Pop Middle East's right to receive the benefits of the Agreement. Specifically, it purported to exercise unlawfully and in bad faith a unilaterally right of termination, while giving no reason for its action, and acted upon its purported termination by abandoning the Agreement or any semblance of performance thereunder. Moreover, any lack of revenue sufficient to meet the Agreement's Revenue Baseline was the direct result of (a) PopSugar's failure to develop and launch an Arabic-language website for ShopStyle, and (b) the Revenue Baseline being based on incomplete and inaccurate financial disclosures. By refusing to renegotiate those Revenue Baselines in light of same, and acting as if it had terminated the Agreement, PopSugar breached the Agreement's covenant of good faith and fair dealing.

54. Based on PopSugar's conduct described in this Complaint, PopSugar also waived its right and/or is estopped to deny such obligations and breaches.

55. On information and belief, Ebates assumed all liabilities of PopSugar as they relate to the ShopStyle business, including the obligations and liabilities of PopSugar under the Agreement. Ebates is therefore liable for PopSugar's breach of the implied covenant as set forth herein.

56. As a result of this breach, Pop Middle East has suffered damages.

**THIRD CLAIM FOR RELIEF AGAINST BOTH DEFENDANTS**

**(FRAUD)**

57. Pop Middle East incorporates by reference the allegations in paragraphs 1 to 42 as if fully set forth herein.

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900

58. Before entering into the Agreement, as reflected above, PopSugar repeatedly represented to Pop Middle East in writing that ShopStyle growth was positive and showed no signs of slowing down. These representations caused Pop Middle East to agree to the Revenue Baseline and other milestones as proposed by PopSugar. As such, they were important and material to Pop Middle East's decision to enter into the Agreement.

59. The representations were knowingly and demonstrably false. As made clear by the data shared on Dec. 29, 2016, as well as Jo Bargioni's statement in London on Jan. 20, 2016, ShopStyle's revenue showed significant signs of slowing down as early as June 2015, and PopSugar knew that in Oct. 2015 and throughout the negotiations leading to the Agreement.

60. PopSugar knew that the material representations about revenue growth were false when it made them and/or PopSugar made such representations recklessly and without regard for their truth. Additionally, upon information and belief, by Oct. 22, 2015, when Jo Bargioni shared data up to June 2015, it already had data for June-September 2015. Thus when Liz Gough described ShopStyle's growth on Oct. 23, 2015, as showing "no signs of slowing down," PopSugar had in its possession data to the contrary.

61. PopSugar intended for Pop Middle East to rely upon these representations in entering into the Agreement.

62. Pop Middle East reasonably relied on PopSugar's representations by entering into the Agreement based on the negotiated Revenue Baseline and growth rate hurdles.

63. On information and belief, Ebates assumed all liabilities of PopSugar as they relate to the ShopStyle business, including the obligations and liabilities of PopSugar under the Agreement. Ebates is therefore liable for PopSugar's fraud as set forth herein.

64. As a result of this fraud, Pop Middle East has suffered damages.

65. By the foregoing, PopSugar is guilty of oppression, fraud, or malice as defined by California Civil Code § 3294(a). Accordingly, Pop Middle East is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and for relief against Defendants, jointly and severally, as follows:

1. For compensatory damages in an amount to be determined at trial, but estimated at this time to be approximately $6.1 million;

2. For punitive damages;

3. For attorney's fees and costs if and as applicable; and

4. For all such other and further relief as the Court may deem just, proper and equitable.

Dated: April 11, 2017 PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP

By: /s/ David Given
David M. Given
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury of all issues so triable.

Dated: April 11, 2017 PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP

By: /s/ David Given
David M. Given
Attorneys for Plaintiff

PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
Telephone: (415) 398-0900